In the

Court of Criminal Appeals

Austin, Texas


Terrence Brent McNeil

Petitioner

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 05 2015

Abel Acosta, Clerk

V

The State of Texas

Respondent


On Appeal from First Court of Appeals Cause Number 01-13-00234-CR

338TH District Court Cause Number 1362563 of Harris County, Texas

Honorable Brock Thomas, Presiding


Petition for Discretionary Review


No Oral Argument

Terrence Brent McNeil

TDCJ #1848870

Beto Unit

1391 FM 3328

Tennessee Colony, TX 75880

FILED IN
COURT OF CRIMINAL APPEALS

JAN 20 2015

Abel Acosta, Clerk

## Identity of Parties and Counsel

Petitioner:
Terrence Brent McNeil
TDCJ #1848870
Beto Unit
1391 FM 3328
Tennessee Colony, TX 75880

Presiding Judges:
Chief Justice Sherry Radack
Court of Appeals, First District
301 Fannin Street
Houston, TX 77002-2066

Justice Terry Jennings
Court of Appeals, First District
301 Fannin Street
Houston, TX 77002-2066

Justice Evelyn Keyes
Court of Appeals, First District
301 Fannin Street
Houston, TX 77002-2066

ii

# Table of Contents

Identity of Parties and Counsel   ii

Table of Contents   iii

Index of Authorities   v

Statement of the Case   vi

Issue Presented   vi

## Issue One

Counsel was ineffective for failing to raise key objections to portions of Petitioner's four videotaped statements. The state used videos as impeachment evidence, and character conformity evidence. Video also contained extensive inadmissible hearsay and opinion testimony from police.

Statement of Procedural History   vii

Argument   vii

Argument - Ground One   1

  A. Standard of Review   1

  B. Counsel failed to raise key objections to portions of Mr. McNeil's videotape.   1

    1. Statement 2, 7-19-2011 (sx51)(R.R. Supp.)   1

  C. Mr. McNeil exercised his right to not testify at trial. Due to counsel's failure to object and seek further redactions, however, the state was able to use his videotaped statements as impeachment evidence and evidence of bad character. Therefore, counsel's ineffectiveness was harmful.   3

Prayer                                                        6

Appendix                                              Opinion

# Index of Authorities

## Cases

Hughes v State, 4 S.W. 3d 1 (Tex. Crim. App. 1999) ................................ 4,5

Langham v State, 305 S.W. 3d 568 (Tex. Crim. App. 2010) ........................ 2

Lesso v State, 295 S.W. 3d 16 (Tex. App. - Houston [1st Dist.] 2009, pet. ref'd) ........ 1

Salinas v Texas, 133 S. Ct. 2174 (2013) ........................................ 3

Strickland v Washington, 466 U.S. 668 (1984) ................................... 1,6

Turner v US., 396 U.S. 398 (1970) .............................................. 3

## Rules

Tex. R. Evid. 403 ............................................................. 5

Tex. R. Evid. 404 (a) ......................................................... 5

## Constitutional Provisions

Tex. Const. Art. I §10 ........................................................ 3,5

U.S. Const. Amend. V .......................................................... 3,5

U.S. Const. Amend. VI ......................................................... 5

U.S. Const. Amend. XIV ........................................................ 3,5

TERRENCE MCNEIL

                                              IN THE

V                                    COURT OF CRIMINAL APPEALS

                                        AUSTIN, TEXAS

THE STATE OF TEXAS


TO THE HONORABLE JUDGE OF THE COURT OF CRIMINAL APPEALS:


Come now, Terrence Brent McNeil, Petitioner, Pro se, files this Petition For Discretionary Review pursuant to Rule 66, Texas Rules of Appellate Procedure.


## Statement of the Case

On May 5, 2014, the Petitioner filed the brief with the First Court of Appeals, based solely on ineffective counsel. How counsel failed to perform his duty as counsel in representing the Petitioner during the Petitioner's trial, before the 338TH District Court of Harris County, Texas. Allowing statements made by the Petitioner to be used by the State during closing argument, and the Petitioner did not testify at trial.


## Issue Presented


## Issue One


The counsel was ineffective for failing to raise key objections


vi

to portions of Petitioner's four videotaped statements. The state used the videos as impeachment evidence, and character conformity evidence. The video also contained extensive inadmissible hearsay and opinion testimony from police.

## Statement of Procedural History

On March 19, 2013, the trial court entered judgment against Petitioner after jury found him guilty of felony murder and assessed punishment at life (2 C.R. at 468). Petitioner timely filed notice of appeal on March 19, 2013. Petitioner brief and supplemental brief were filed May 5, 2014. On the 20th day of November, 2014, the First Court of Appeals affirmed the trial court's judgment.

## Ground For Review

First Court of Appeals erred on ruling that counsel was not ineffective for not raising key objections to portions of Petitioner's videotaped statements. The State used the videos as impeachment evidence and character conformity evidence.

## Argument

First Court of Appeals erred on ruling that counsel was not ineffective for not raising key objections to portions of Petitioner's videotaped statements. The State used the videos as impeachment evidence and character conformity evidence.

"You heard four plus hours of him," one of the prosecutors told jurors during closing argument. "And don't for a second think we played those statements for you because we believe all his claims of accidental injuries. ....Not because we believe that at all. Because we wanted you to see who he was. We wanted you to see how self-centered and self-absorbed Terrence McNeil is. Because in every one of those statements, it was all about him...." (T.R.R. at 129)

A. Standard of Review

When an ineffective assistance claim alleges that counsel was deficient in failing to move to suppress or to object, the petitioner must show that the evidence was inadmissible and that the motion to suppress or the objection would have been granted. Lesso v State, 295 S.W. 3d 16, 21 (Tex. App. – Houston [1st District] 2009, pet. refd). This showing established the first prong of Strickland's two part analysis: that counsel's performance was deficient. Strickland v Washington, 466 U.S. 668 (1984).

B. Counsel failed to raise critical objections to portions of Mr. McNeil's videotapes.

1. Statement 2, 7-19-2011 (3 x 5i)(R.R. Supp.):

A: ...So, me spending a few...
A. Hours with her, you're saying that all of a sudden, all these problems just came wrong with her?
A: ...Okay, but, you need to understand how I function. I love Anita, and when she has that look... when she's asking me, you know, with tears almost coming out of her eyes, you

1

know, "you think that, uh, her arm was fractured 'cause of how you handled her," I'm like "uh, baby. If... If I did hurt her by how I picked her up, I apologize to you, baby." That's what I said: "If I did hurt her, I apologize to you baby." And that's the cour.... courteous thing to do. If you hurt somebody by accident, you apologize. So, you... but you're asking me why I would apologize.

A. 'Cause I told her if her arm was fractured from how I picked her up that one time [motioning with fists], I apologize for picking her up that way. That's all I was saying (p.11 at 21e:29)

A. Well, I'm looking at is, I'm a black male and a baby was hurt and she died. And it's... and I... I'm not playing no race card, I'm just playing the reality card ...It's white detectives, white doctors, looking at a black male, who, at the time, had no job, and they're just looking for somebody to hang for the baby being hurt and dying. (p.29 at 1:24:40)

A. Well she never threw up

A. No. She spit up when I gave her CPR. She never threw up.


A reviewing court is required to look beyond the state's mere assertion that statements are "contextual" and determine whether, in fact, the statements the state seeks to offer are testimonial, and harmful to the defendant. See Langham v State, 305 s.w. 3d 568, 576 (Tex. Crim. App. 2010) Counsel was ineffective for failing to challenge the state's bald assertion.


This additional ineffectiveness was not harmless beyond a reasonable doubt. In fact, it most likely was extremely harmful, given the hours of court time devoted to playing the videos for the jury.

2

C. Mr. McNeil exercised his right to not testify at trial. Due to counsel's failure to object and seek further redactions, however, the state was able to use his videotaped statements as impeachment evidence and evidence of bad character. Therefore, counsel's ineffectiveness was harmful.

A criminal defendant has an absolute right to not testify. U.S. Const. Amend. V, XIV; Tex. Const. Art. 1 §10. Because a defendant's reasons for remaining silent at trial are irrelevant to this constitutional right, he need not expressly invoke that privilege. See Salinas v Texas, 133 S.Ct. 2174, 2179 (2013), citing Turner v U.S., 396 U.S. 398, 433 (1970) (Black, J., dissenting).

Mr. McNeil chose not to testify during the guilt/innocence stage of trial (4 R.R. at 94). Nevertheless, the jury heard him and watched him being questioned by police for more than four hours. Much of the State's use of Mr. McNeil's statements was akin to calling a witness for the purpose of impeaching him with evidence of bad character. That was the State's recurring theme during the trial. During opening statements, one prosecutor said:

You are going to hear, from the defendant's mouth, three, arguably four, different statements with three different officers. And while you are watching five hours in total of what the defendant says happened, when you watch the defendant for about five hours trying to explain himself, when you watch the defendant give every different version but the truth, watch for a tear. Look for a tear, one tear that is dropped....

He's interviewed that night. He's interviewed months later when he's arrested by two

different officers. He's going to give explanations which are not true ... (4 R.R. at 14). Counsel objected: "This is not necessarily opening argument, more of final arguments." (4 R.R. at 15). Then, he did not bother to make an opening statement on Mr. McNeil's behalf.

Then, during closing arguments, both prosecutors reiterated this theme. In addition to the argument quoted in the introduction to Issue Two above, prosecutors also argued:

• "Who has a child die in their arms - his words - who has a child die in their arms and act like he did? That's why played those statements for you: So you could see who he is and so you could hear his lies. ..." (7 R.R. at 130).

• "That's why we played those statements for you: So that you could see what a self-absorbed, self-centered liar he is, so that you would know from those words and from what you heard, from all the evidence, what he did to that child, that he murdered her." (7 R.R. at 131).

• "Did you notice in four and a half hours, all he's worries [sic] about is how Anita is going to react to what he has done? Right?" (7 R.R. at 150).

A party may not call a witness for the primary purpose of obtaining impeach-ment evidence. See Hughes v State, 4 S.W. 3d 1 (Tex. Crim. App. 1999):

The lack of favorable testimony suggests the State was attempting to use [the

4

witness] prior inconsistent statements under the guise of impeachment for the primary purpose of placing before the jury evidence which was not otherwise admissible. ... Due to the highly prejudicial nature of this evidence we conclude any probative value it may have had was substantially outweighed by its prejudicial effect. We hold the Court of Appeals erred in failing to find the trial court abused its discretion under Rule 403 when permitted the State to admit evidence of [the witness] prior inconsistent statements to impeach her testimony. Hughes 4 S.W. 3d at 7. Yet this is exactly how the State used Mr. McNeil's statements. In effect, the State was asking the jury to find Mr. McNeil guilty of murder because of his alleged character as an insensitive liar.

Character evidence is not admissible for the purpose of proving that a person acted in conformity with it on a particular occasion. Tex. R. Evid. 404(a). Even if it were, the State's character evidence in this case purported to show that Mr. McNeil was a liar and insensitive, neither of which tends to prove that he also is a murderer. Counsel was ineffective because he failed to object to the content of statements that were not probative of elements of the offense and not strictly contextual. This allowed the state to place him on trial for bad character, in effect impeaching him through his statements even though he exercised his right to not testify at trial.

The issue above is sufficient to require reversal of Mr. McNeil's murder conviction due to the violation of his right to effective assistance of counsel under United States Const. Amends. V, VI, and XIV, and under Tex. Const. Art. 1 §10. However, when viewed together, they demonstrate conclusively that counsel's overall performance was deficient.

5

Further, there is a reasonable probability that the result of this trial would have been different but for the errors made by counsel. If the jury had been properly instructed on the use of extraneous offense evidence, if the State had not been given virtual free reign to use Mr. McNeil's statements for any and all purposes, then this would have been a reasonable doubt case. There is a reasonable probability that the 12 jurors would have found him not guilty, or at least would have been unable to agree unanimously that he was guilty. After all, it only takes one jury with a reasonable doubt to prevent a conviction, and took even the police 10 months to settle on Mr. McNeil, rather than Ms. Washington, as the alleged murderer. Alternatively, but for these errors, it is highly unlikely that Mr. McNeil, who had no prior felony record, would have received a life sentence. His conviction should be reversed. See Strickland v Washington, 466 U.S. 668 (1984)

## Prayer

Mr. McNeil respectfully request this Court to review the records and Reporter Record, plus supplement Record and reverse his conviction and remand this case for a new trial.

Respectfully Submitted,

Terrence McNeil

6

Terrence McNeil, #1848870

Beto Unit

1391 FM 3328

Tennessee Colony, TX 75880

7



Terrence McNeal, #1848870
Beto A 127 B
1391 FM 3328
Tennessee Colony, TX 75880

Court of Criminal Appeals
P.O. Box 12308
Capitol Station
Austin, TX 78711